Christina **MILLER**, Administratrix of the **ESTATE OF** Travis L. Landis **HOTT**, Plaintiff,

v.

**AUGUSTA MUTUAL INSURANCE CO.,** Defendant

**No. CIV.A.5:03 CV 00052.**

United States District Court, W.D. Virginia, Harrisonburg Division.

Sept. 13, 2004.

Timothy Ralph Obitts, Gammon & Grange, P.C., Robert B. Adams, McLean, VA, for Plaintiff.

Daniel Leroy Fitch, Wharton, Aldhizer & Weaver, PLC, Harrisonburg, VA, Victor M. Santos, Nelson McPherson Summers & Santos, Staunton, VA, for Defendant.

### MEMORANDUM OPINION

WILSON, District Judge.

This is a declaratory judgment action by Christina Miller on behalf of the estate of her deceased son, Travis Hott, who was shot to death by Robert M. Luttrell, Jr. (Luttrell). Miller seeks to determine the rights of her son's estate under a liability insurance policy issued to Luttrell's parents, Robert and Noreen Luttrell (the Luttrells) by Augusta Mutual Insurance Co. (Augusta Mutual). The decedent was a citizen of West Virginia and Augusta Mutual is a Virginia corporation with its principal place of business in this state.

The court therefore has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] The matter is before the court on Augusta Mutual's motion for summary judgment. The court finds that Luttrell's refusal to provide material information regarding the shooting by asserting his Fifth Amendment privilege breached his duty to cooperate under the policy, a condition precedent to Augusta Mutual's contractual obligation to pay. For reasons stated, the court grants defendant Augusta Mutual's motion for summary judgment.

## I.

On September 14, 2001, Travis Hott was shot and killed in the home of Robert and Noreen Luttrell. Their son was the only witness to the shooting.[2] The Luttrells' homeowners' insurance contract with Augusta Mutual provided coverage for personal liability up to $100,000. The policy included a provision requiring that, in case of an accident or 'occurrence,' the insured must "[a]t our request, help us…to secure and give evidence." The policy further provided that "[t]he entire policy will be void if…an 'insured' has…intentionally concealed or misrepresented any material fact or circumstance."

Augusta Mutual received notice on November 19, 2001, from Christina Miller of her intent to pursue a wrongful death

---

1. The court initially granted Miller leave to amend her complaint to join Robert M. Luttrell, Jr., a citizen of Virginia, as a defendant in this action pursuant to Federal Rule of Civil Procedure 20. Because there is no valid controversy between Luttrell and Miller as to coverage of Luttrell under the Augusta Mutual policy, however, the court would have realigned Luttrell on the side of the plaintiff. Such realignment in accordance with the parties' respective interests would have destroyed diversity, and all parties have instead agreed to dismiss Luttrell from this action without prejudice in order to cure the jurisdictional defect, pursuant to Federal Rule of Civil Procedure 21. The court therefore has diversity

jurisdiction, in accordance with the 'time-of-filing' rule recently reiterated by the Supreme Court in *Grupo Dataflux v. Atlas Global Group,* —— U.S. ——, ——, 124 S.Ct. 1920, 1924, 158 L.Ed.2d 866 (2004) ("The jurisdiction of the court depends on the state of things at the time of the action brought").

2. Both Robert M. Luttrell, Sr. and Robert M. Luttrell, Jr. were named as defendants in the Miller wrongful death action. Because this action involves only Augusta Mutual's obligation to Robert M. Luttrell, Jr., for purposes of this opinion "Luttrell" refers only to Robert M. Luttrell, Jr.

claim.[3] Upon receiving Miller's notification, Augusta Mutual began an investigation to determine its contractual obligations. On December 4, 2001, the Commonwealth charged Luttrell with second degree murder and use of a firearm in commission of a felony. Augusta Mutual contacted Luttrell's criminal defense attorney, who said she would not permit Augusta Mutual to interview Luttrell during the pending criminal litigation. On December 13, 2001, Augusta Mutual sent a letter to the Luttrells reiterating its request for a statement regarding the shooting and on December 28, requested evidence from the Commonwealth, a request the Commonwealth's Attorney denied.

In January 2002, while Luttrell's criminal case was pending, Miller filed a wrongful death action in the Circuit Court of Frederick County, Virginia, naming Robert Luttrell, Sr. and Robert Luttrell, Jr. as defendants. On January 2, 2002, Augusta Mutual again contacted the Luttrells, this time indicating that it could not determine from the available evidence whether Miller's wrongful death claim was covered. It once again requested statements from the Luttrells, and reiterated that: "Failure to cooperate with [Augusta Mutual] in any matters of litigation may render [the Luttrell's] coverage null and void." Despite these repeated requests for information and the warning that the failure to cooperate could result in a disclaimer of coverage, Luttrell, relying upon the advice of his criminal defense attorneys, refused to provide Augusta Mutual with information regarding the shooting.

On January 17, 2002, Augusta Mutual informed the Luttrells that it had retained an attorney on behalf of Mr. Luttrell and his son to defend against Miller's claim, but reserved its rights. Mr. and Mrs. Luttrell agreed to give Augusta Mutual a sworn statement, as their liability policy required. Their son, the only eyewitness, indicated that the shooting was accidental and informed Augusta Mutual that he would not give a statement under oath. Augusta Mutual nevertheless scheduled his examination, and he appeared with his criminal defense counsel. In response to Augusta Mutual's initial questioning as to whether Luttrell, Jr. was prepared to "answer questions in specificity" about the September 14 shooting, Luttrell responded: "I'm pleading the Fifth [because] the public defenders told me to." Augusta Mutual's counsel sought to confirm Luttrell's assertion of the Fifth Amendment privilege asking: "because of that privilege you will not answer any questions relating to the circumstances and events surrounding the shooting death of Travis Hott on September 14th?" Both Luttrell and his criminal defense counsel confirmed that Luttrell was asserting the privilege, and the meeting ended. As a consequence, Augusta Mutual informed Luttrell in February 2002 that his failure to cooperate in Augusta Mutual's investigation and his concealment of material facts by his assertion of the privilege constituted a breach of his duty of cooperation and Augusta Mutual was no longer obligated to provide a defense or to indemnify him in Miller's wrongful death action. The wrongful death action proceeded without Luttrell

---

**3.** There is some dispute as to when Augusta Mutual first received notice of a potential claim. The Luttrells claim they notified an agent of Augusta Mutual, Peggy Lee, on or about September 17, 2001. According to her deposition testimony, Lee admits that both Noreen Luttrell and Christina Miller spoke to her about the shooting incident, but that neither unequivocally indicated their intent to file a claim. Augusta Mutual maintains it had no written notice of the claim until November 19, 2001, when it received a letter from Miller's attorney.

raising Augusta Mutual's duty to defend. In May 2002, Miller's attorney sought to depose Luttrell in that proceeding, and Luttrell again asserted his Fifth Amendment privilege.

On September 19, 2002, Luttrell pled guilty to involuntary manslaughter. The following month, Miller voluntarily dismissed her Frederick County wrongful death action and re-filed it in this court under the court's diversity jurisdiction. Miller's attorney deposed Luttrell in April 2003, and this time Luttrell answered questions about the shooting.[4]  In June 2003, this court entered a default judgment against Luttrell in the wrongful death action, and Miller filed this declaratory judgment action seeking an adjudication of her rights under Augusta Mutual's policy.

## II.

█ Augusta Mutual contends that Luttrell violated the cooperation clause of his insurance contract by failing to provide Augusta Mutual with material information concerning the September 14 shooting, a condition precedent to liability under the policy, thus relieving it of its duty to defend or indemnify Luttrell. Miller counters that Augusta Mutual failed to make a reasonable effort to obtain Luttrell's cooperation. Essentially, Miller claims that Luttrell might have cooperated, as evidenced by his multiple statements to the police, had Augusta Mutual sought to question him earlier, and Luttrell might

have relented had Augusta Mutual's counsel questioned Luttrell further following his claim of privilege. In effect, rather than holding Luttrell to his broad duty to cooperate, Miller seeks to impose on Augusta Mutual a duty to prod and cajole Luttrell into abandoning his Fifth Amendment privilege.

█ Under Virginia law, "a cooperation clause is in the nature of a condition precedent to liability on the insurer's part...and a failure to perform...constitutes a defense to liability on the policy." *State Farm Mutual Auto. Ins. Co. v. Arghyris*, 189 Va. 913, 55 S.E.2d 16, 21 (1949). Virginia law does not require an insurer to show prejudice in order to establish the defense of non-cooperation. *Grady v. State Farm Mutual Auto. Ins. Co.*, 264 F.2d 519 (4th Cir.1959). An insured "may avoid incriminating [himself] by refusing to submit to relevant requests made by [the insurer] under the policy...although to do so may ultimately cost [him] insurance coverage." *Powell v. U.S. F & G Co.*, 88 F.3d 271, 274 (4th Cir.1996). The refusal to respond to material questions amounts to a failure to cooperate. *See Amer. States Ins. Co. v. Enterpriser Lighting, Inc.*, 1994 U.S. Dist. LEXIS 14988, *22–23 (E.D.Va.1994). Luttrell's assertion of the Fifth Amendment in response to Augusta Mutual's questioning therefore constituted a failure to cooperate as a matter of law.[5]  *See also U.S. Specialty Ins. Co. v. Skymaster of Virginia, Inc.*,

---

**4.** Luttrell gave no fewer than five different versions of the incident to law enforcement officials immediately following the shooting. His testimony in the 2003 deposition presented a sixth version of events.

**5.** Luttrell's fear that his statements could be used against him did not excuse his duty under the contract made between the Luttrells and Augusta Mutual. The government

did not compel Luttrell to furnish evidence against himself; rather, his testimony is the result of his own contractual undertaking. "Where the undesirable consequences arise from the claimant's own voluntary actions, the privilege against self-incrimination cannot be used to extricate the claimant from a dilemma of his own making." *Mello v. Hingham Mutual Fire Ins. Co.*, 421 Mass. 333, 656 N.E.2d 1247, 1251 (1995).

26 Fed.Appx. 154, 157, 2001 WL 1602030, *2 (4th Cir.2001) (unpublished) (relying on *Powell* to hold that an insured "may not rely on the Fifth Amendment to avoid a contractual obligation to cooperate").[6]

■ Miller argues that Augusta Mutual's obligations under the insurance contract were not discharged because it failed to "diligently perform" its investigation by making a reasonable effort to secure cooperation from Luttrell. "In order to establish that the insured has breached a cooperation clause...the insurer must prove...that the insurer made a reasonable effort to secure the insured's cooperation." *Continental Casualty Co. v. Burton,* 795 F.2d 1187, 1193–94 (4th Cir.1986). However, the uncontradicted evidence establishes that Augusta Mutual made a substantial effort to obtain Luttrell's cooperation.[7] The correspondence in the record shows that Augusta Mutual made repeated attempts to secure Luttrell's cooperation, even warning him that his failure to respond could result in a denial of coverage. *See Nationwide Mutual Fire Ins. Co. v. Dunkin,* 850 F.2d 441, 443 (rejecting insured's contention that insurer failed to use reasonable diligence where she refused to answer interrogatories and was aware that her lack of cooperation violated the terms of the insurance policy). Augusta Mutual also retained counsel for Luttrell, under a full reservation of rights, and indicated to Luttrell his duty to cooperate with his defense counsel.

At oral argument, Miller's counsel claimed that Augusta Mutual's questioning at the January 21 examination effectively "encouraged" Luttrell to assert his Fifth Amendment privilege, that Augusta Mutual was obligated to set forth a record of its questions rather than relying on Luttrell's "blanket assertion" of the privilege to invalidate the contract, and that Augusta Mutual's failure to do so amounted to a lack of reasonable diligence. The court finds this argument untenable.[8] Miller's contention that Augusta Mutual "encouraged" Luttrell to assert the Fifth Amendment is totally unsupported, given that Luttrell had advised Augusta Mutual through his attorney that he would not testify, that he was represented by his

**6.** Nor was Augusta Mutual required to wait until the criminal proceedings had ended before obtaining information from Luttrell. *See Mello,* 656 N.E.2d at 1252 ("The insurer's contractual right is to determine promptly—while the evidence and memories are still fresh—the validity of any loss for which it might become liable."). *See also Harary v. Allstate Ins. Co.,* 988 F.Supp. 93, 102 (E.D.N.Y.1997) ("The insured's obligation to cooperate is not met...by promises of evidence to be supplied in some indefinite future").

**7.** Miller also argues that Augusta Mutual unreasonably delayed in commencing investigation of the Luttrells' claim. The court finds the parties' dispute regarding the timing of notice immaterial because Luttrell breached his duty to cooperate by asserting his Fifth Amendment privilege at the January 2003 examination under oath.

**8.** Cases addressing the reasonable diligence requirement have uniformly focused on the insurer's obligation to maintain contact with the insured. *See Union Ins. Co. of Providence v. Williams,* 261 F.Supp.2d 1150, 1152 (E.D.Mo.2003) (finding reasonable diligence where insurer sent repeated requests for cooperation to insured's attorney and directly to insured); *Wildrick v. North River Ins. Co.,* 75 F.3d 432, 436 (8th Cir.1996) (finding reasonable diligence where attorney hired by insurer met personally with insured "numerous times"); *Cf. Amer. Guarantee and Liability Ins. Co. v. Chandler Manufacturing Co., Inc.,* 467 N.W.2d 226, 230 (Iowa 1991) (Insurer failed to use reasonable diligence where it only wrote letters to insured and did not personally contact him or provide him with an attorney in his home state).

criminal defense counsel at the examination and that he unequivocally stated that he was acting on the advice of his criminal attorneys. The court therefore finds that Augusta Mutual met its obligation to make a reasonable effort to secure Luttrell's cooperation.

■■■■ At oral argument, Miller's counsel also claimed that Augusta Mutual's failure to provide Luttrell with civil defense counsel at the January 21 examination constituted a breach of its duty to defend Luttrell. This argument misconstrues the duty to defend.[9] An insurer is generally obligated to defend against *third-party* claims. The policy issued by Augusta Mutual indicates: "If a claim is made or brought against an insured for damages...we will...provide a defense at our expense by counsel of our choice."[10] The language of the policy, even "construed most strongly against the insurer," contemplates a third party claim. *America Online*, 207 F.Supp.2d at 465. The duty to defend therefore does not encompass a duty to defend the insured against his own insurer.

Luttrell had a duty under the terms of the insurance policy to cooperate with Augusta Mutual in its investigation of the September 14 shooting. Despite repeated requests for information and warnings that failure to respond could result in a loss of coverage, Luttrell refused to give Augusta Mutual any information concerning the incident. Rather than giving Augusta Mutu-

al a statement under oath, he asserted his privilege against self-incrimination. The court finds that, despite Augusta Mutual's reasonable efforts to secure his cooperation, Luttrell failed to cooperate, a condition precedent of coverage, thus relieving Augusta Mutual of its obligation to provide a defense or to indemnify him under the policy.

## III.

Finding no genuine issue of material fact, the court, for reasons stated, **GRANTS** defendant Augusta Mutual's motion for summary judgment.

## FINAL ORDER

In accordance with the accompanying memorandum opinion entered on this day, it is **ORDERED** and **ADJUDGED** that defendant Augusta Mutual's motion for summary judgment is **GRANTED**. This action shall be stricken from the docket of this court.

---

9. Miller is correct that an insurer has a broad contractual duty to defend against third party claims. Under Virginia law, "the obligation [of an insurer] to defend is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207

F.Supp.2d 459, 465 (E.D.Va.2002). The point is immaterial, however, because Luttrell failed to cooperate.

10. To determine whether an insurer has a duty to defend, the " 'eight corners rule' requires review of...the policy language to ascertain the terms of the coverage." *America Online*, 207 F.Supp.2d at 465.